FILED
11/21/2024
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 11, 2024

## IN RE PRINCETON W.

**Appeal from the Chancery Court for Madison County
No. 77522    Steven W. Maroney, Chancellor**

———————————————————

**No. W2023-00884-COA-R3-PT**

———————————————————

This appeal concerns the termination of a mother's parental rights to her child. The trial court determined that the mother had abandoned the child by failure to engage in more than token visitation and further ruled that it was in the child's best interests for the mother's rights to be terminated. Because we conclude that clear and convincing evidence supports both the ground of abandonment by failure to visit and that termination of the mother's parental rights is in the best interests of the child, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

William J. Milam, Jackson, Tennessee, for the appellant, Dejanae Y.

J. Noble Grant, III, Jackson, Tennessee, for the appellee, Raya M.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

Princeton W.[1] ("Child") was born out of wedlock to Dejanae Y. ("Mother") and Desmond W. ("Father") on February 2016, when Mother was twenty years old and enrolled in an undergraduate degree program.[2]  Due to the stress brought on by her pregnancy,

---

[1] This Court has a policy of protecting the identities of children involved in parental termination cases and accordingly abbreviates certain names appearing in the Opinion.

[2] Father, who had executed a voluntary acknowledgement of paternity, also had his parental rights terminated in this proceeding. Other than file a pro se response to the termination petition, Father did not participate in the trial court proceeding, and he did not appeal the trial court's order or otherwise engage in

Mother withdrew from the undergraduate program and did not return to finish her degree. In August 2016, Mother asked first cousin, Raya M. ("Raya"), to temporarily take care of Child. When Raya received Child, he was behind on his vaccinations, and only had a car seat, a bottle, and one set of clothes.

Although the childcare arrangement was initially informal, Mother filed a sworn petition in the Madison County Juvenile Court on February 9, 2017, to place Child in the temporary legal custody of Raya. Throughout this time, Mother experienced issues with her mental health, and, on one occasion, Mother attempted suicide. She began seeking treatment for her mental health in early 2017, and she later moved from Jackson, Tennessee, to Chicago, Illinois, in October 2017.

On February 11, 2019, Raya filed a petition in the Madison County Chancery Court ("trial court") to terminate the parental rights of Mother and to adopt Child. Among other grounds not relevant to this appeal, Raya alleged that Mother had abandoned Child by failure to visit and that it was in Child's best interests for Mother's parental rights to be terminated. In her answer, Mother denied these allegations and stated that she was now prepared to care for Child.

At trial, there was much testimony concerning Mother's lack of visitation with Child. After Raya accepted legal custody of Child, Mother sporadically saw him. There was also testimony concerning a series of brief video chats that occurred between Mother and Child. Nonetheless, the evidence at trial demonstrated that Mother had not interacted with Child since a brief visit in December 2018.

In addition to the issue of visitation, there was testimony at trial concerning Mother's struggles with mental illness, ongoing instances of illicit drug use in Mother's residence, and the strong bond between Child and Raya relative to the Child's minimal contacts with Mother. Furthermore, Dr. John Ciocca, a licensed clinical psychologist, provided expert testimony concerning his assessment of Child and his opinion that returning custody of Child to Mother would have negative effects on Child's development and well-being.

Upon the conclusion of the trial, the trial court found that Mother failed to engage in more than token visitation with Child and, accordingly, concluded that the ground of abandonment by failure to visit was proven by clear and convincing evidence. Having concluded that one ground for termination had been sufficiently established, the trial court additionally determined that clear and convincing evidence supported that termination of

the appeals process. In a subsequent per curiam order, this Court ordered Father to notify the Court if he planned to participate in the appeal and noted that the appeal would proceed without further notice if he did not provide notification that he planned to participate. No response or notification has been submitted by Father within the time frame provided in the order. As such, this Court's review is limited to the trial court's judgment as it pertains to Mother.

Mother's parental rights was in Child's best interests.

This appeal followed.

## ISSUES PRESENTED

In her appellate brief, Mother presents two issues for this Court's review, which we restate as follows:

I.      Whether there was clear and convincing evidence to prove that Mother had abandoned Child by failure to visit.

II.     Whether there was clear and convincing evidence to prove that termination of Mother's rights was in the best interests of Child.

Although Mother's briefing thus challenges the ground for termination relied upon by the trial court, as well as its best interest's determination, we would be obligated to consider such matters in any event. Indeed, consistent with the mandate from the Tennessee Supreme Court in *in re Carrington H.*, we are required to "review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016).

## STANDARD OF REVIEW

Due to the heightened burden of proof, we employ the following standard of review:

First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights.

*In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

## DISCUSSION

We first turn to whether there was clear and convincing proof in the record to support the trial court's decision that Mother abandoned Child by failure to visit. Tennessee Code Annotated section 36-1-113 delineates "[a]bandonment by parent or guardian, as defined in § 36-1-102" as a ground for the termination of parental rights. Tenn. Code Ann.

§ 36-1-113(g)(1). As is relevant here, abandonment was defined as follows when the termination petition was filed:

> For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(i).

Of note, even if instances of visitation have occurred within the relevant time frame, a court may still determine that abandonment has occurred, if it finds that these instances were limited to "token visitation." *See In re Keri C.*, 384 S.W.3d 731, 748-49 (Tenn. Ct. App. 2010) (discussing the legal relevance of token visitation). Token visitation "means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child[.]" Tenn. Code Ann. § 36-1-102(1)(C). "Whether visitation is 'token' under this definition is a fact-intensive inquiry to be decided on a case-by-case basis." *In re Keri C.*, 384 S.W.3d at 748.

For purposes of the ground of abandonment, the trial court is required to look at the relevant period of four months prior to the filing of the petition. The petition in this case was filed on February 11, 2019, and as such, our focus is on the period of four consecutive months immediately preceding that date. Here, the trial court determined that Mother failed to engage in anything more than token visitation during the relevant time period. The trial court found that "the lone interaction" between Mother and Child, during the relevant time period, occurred in December 2018, when Mother came to Jackson from Chicago for a visit. According to the trial court, the trip "was not designed around visiting Child," and Mother only interacted briefly with him. Moreover, Mother admitted that she did not attempt to schedule another in-person visitation during the relevant time period.

The trial court also noted testimony concerning video chats in which Mother interacted with Child during the relevant time period. Although Mother would speak to Child during these instances, the court found that the primary purpose of these video calls was for Mother to speak with her mother and siblings and not to facilitate interactions between Mother and Child. Further, the court found any incidental interactions between

Mother and Child in these instances were brief. We agree and observe that Mother testified to the nature of these interactions as follows:

> Q. I understand your testimony to be that you had some video chats with your mother and your brothers and you would see [Child] occasionally during those video chats; is that correct?
>
> A. Yes.
>
> . . .
>
> Q. And as I understand your testimony, when you were video chatting with your mother or your brothers, [Child] may run up to the phone and put his face in the phone and then run off and go do whatever he was doing, correct?
>
> A. Correct.
>
> Q. That was about the extent of [Child's] involvement in those video chats, correct?
>
> A. Correct.

In light of the testimony in this record, we agree with the trial court that Mother's brief interactions with Child during the relevant time period were no more than token visitation, at best, and we conclude that this ground was proven by clear and convincing evidence.

Having determined that clear and convincing evidence supports the existence of at least one statutory ground to terminate Mother's parental rights, we next assess whether the termination of such rights was in the best interests of Child. Tenn. Code Ann. § 36-1-113(c)(2). At the time the petition was filed, Tennessee Code Annotated section 36-1-113(i) provided nine non-exclusive factors to consider in rendering a best interests analysis. Tenn. Code Ann. § 36-1-113(i); *see In re S.S.*, No. E2021-00761-COA-R3-PT, 2022 WL 1151424, at *8 n.4 (Tenn. Ct. App. Apr. 19, 2022) (analyzing the best interests factors that were in place when the petition to terminate was filed). Because "[a]scertaining a child's best interests involves more than a 'rote examination'" of the best interests factors, "the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case." *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017) (quoting *In re Audrey S.*, 182 S.W.3d at 878). Moreover, a trial court is "not limited to" the delineated best interests factors, and it therefore may consider other pertinent circumstances. Tenn. Code Ann. § 36-1-113(i).

Tennessee Code Annotated section 36-1-113(i), at the time the petition was filed, specifically contained the following best interests factors:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i).

In the instant case, the trial court determined that factors one, and three through eight, favored termination, whereas it held that factor two was neutral and factor nine weighed against termination.[3] In discussing the factors favoring termination, the trial court

---

[3] Because there was no evidence that social services became involved with Child's custody status,

expressed concern about Mother's emotional instability and the presence of illegal drugs, as well as drug use, in her household. It also emphasized that Mother had not visited with Child, albeit briefly, since December 2018.[4] The trial court concluded that Mother's lack of visitation has diminished her relationship with Child, stating she had not visited Child since he "was 2 years, 10 months old. Child is now seven years old. He would not know Mother if she appeared in his presence." Conversely, the trial court found that Child had formed a healthy attachment to Raya and that she has provided Child a stable environment since he was only six months old.

Upon our review of the record, we observe testimony supporting instances of illegal drug use in Mother's household, and we agree that such an environment would pose a risk to Child's well-being. Additionally, expert testimony from Dr. John Ciocca, a licensed clinical psychologist, indicated that Child believed Raya to be his mother, and that Child was unaware of another potential mother. Moreover, Dr. Ciocca testified that "[a]ny significant disruption of his relationship with [Raya] would certainly result in severe negative developmental and psychological consequences." We also highlight that even Mother agreed that a change in Child's caretakers would likely have a detrimental effect on his emotional, psychological, and medical well-being. In light of such testimony, other evidence discussed herein, and the totality of the circumstances evidenced by the record, we agree with the trial court that there was clear and convincing evidence that termination of Mother's parental rights was in the best interests of Child.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE

---

the trial court found that factor two was inapplicable. As to factor nine, the trial court determined that Mother paid child support consistent with the relevant guidelines.

[4] Although the trial court noted elsewhere that Mother claimed she thought she could not visit with Child during the litigation, the court observed that there was no court order prohibiting her from doing so.